**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff.*<br><br>v.<br><br>CHRISTOPHER HUNTER,<br><br>*Defendant.* | ) | Case No. 93-0079-WS<br>Hon. William H. Steele |

**DEFENDANT'S SUPPLEMENTAL BRIEF IN FURTHER SUPPORT
OF MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)**

# TABLE OF CONTENTS


INTRODUCTION ........................................................ 1

ARGUMENT ........................................................ 2

I. Section 1B1.13(b)(5) Remains an Independent Basis for Compassionate Release. ........... 2

II. Hunter's Personal Circumstances and Sentencing Disparity Amount to Extraordinary and Compelling Reasons Warranting a Reduction of His Sentence Under § 1B1.13(b)(5). ........................................................ 5

A. Hunter's Youth and Family Circumstances at the Time of the Offenses Weigh in Favor of a Reduced Sentence. ........................................................ 5

B. Hunter's Remarkable Rehabilitation and Strong Family Support a Sentence Reduction. ........................................................ 7

C. Hunter's Recent Act of Heroism Is an Extraordinary and Compelling Circumstance Favoring a Sentence Reduction. ........................................................ 10

D. The Extraordinary Length of Hunter's Sentence Favors a Sentence Reduction. .......... 12

E. The Significant Disparity Between Hunter's and His Co-Defendant's Sentence Weighs in Favor of Relief. ........................................................ 13

III. The § 3553(a) Factors Support a Reduction of Hunter's Sentence to Time Served. ......... 15

CONCLUSION ........................................................ 17

# TABLE OF AUTHORITIES

**Cases**

*Rutherford v. United States*,
608 U.S. ___, 146 S. Ct. 1320 (2026)........ *passim*

*United States v. Brown*,
715 F. Supp. 3d 1034 (S.D. Ohio 2024)........12

*United States v. Brown*,
No. 12-20953-CR-COHN, 2025 WL 2429021 (S.D. Fla. Apr. 25, 2025)........4, 5, 14

*United States v. Cannon*,
764 F. Supp. 3d 1332 (M.D. Ga. 2025)........14

*United States v. Countess*,
No. 04-232-BAH, 2026 WL 482312 (D. Md. Feb. 20, 2026)........6, 15

*United States v. Cruz*,
No. 94-CR-112 (JCH), 2021 WL 1326851 (D. Conn. Apr. 9, 2021)........6, 15

*United States v. Douglas*,
No. CR 10-171-4 (JDB), 2021 WL 214563 (D.D.C. Jan. 21, 2021)........8, 16

*United States v. Evans*,
759 F. Supp. 3d 1247 (S.D. Fla. 2024)........1

*United States v. Gallego*,
No. 95-CR-0284 (LAK), 2025 WL 723237 (S.D.N.Y. Mar. 6, 2025)........9, 15

*United States v. Haynes*,
456 F. Supp. 3d 496 (E.D.N.Y. 2020)........11

*United States v. Ingram*,
No. 5:94-CR-2-2, 2024 WL 3696514 (S.D. Ga. Aug. 7, 2024)........14

*United States v. Johnson*,
778 F. Supp. 3d 997 (C.D. Ill. Apr. 11, 2025)........12

*United States v. LeBaron*,
No. CR H-92-177-05, 2023 WL 7308116 (S.D. Tex. Nov. 6, 2023)........6, 15

*United States v. Matthews*,
No. 5:01-CR-18 (MTT), 2025 WL 2055526 (M.D. Ga. July 22, 2025)........4

*United States v. Meeks*,
No. 1:97-CR-00169-4, 2021 WL 9928774 (N.D. Ill. Dec. 15, 2021)........11

*United States v. Palacios*,
No. 97-CR-646 (CBA), 2025 WL 1446131 (E.D.N.Y. May 20, 2025) ....................................6

*United States v. Risher*,
No. 1:19-CR-539 (FB) (JRC), 2026 WL 1862339 (E.D.N.Y. June 29, 2026) ..........................4

*United States v. Rivero*,
762 F. Supp. 3d 1245 (S.D. Fla. 2024) ........................................................................12

*United States v. Robinson*,
No. 2:06CR318, 2025 WL 841014 (W.D. Pa. Mar. 18, 2025)..................................................9

*United States v. Rodriguez*,
719 F. Supp. 3d 1262 (S.D. Fla. 2024) ........................................................................11

*United States v. Rollins*,
540 F. Supp. 3d 804 (N.D. Ill. 2021) ..........................................................................12

*United States v. Smith*,
762 F. Supp. 3d 1249 (S.D. Fla. 2024) ..........................................................3, 5, 14, 15

*United States v. Vanholten*,
No. 3:12-CR-96-RBD-MCR, 2023 WL 8357739 (M.D. Fla. Dec. 1, 2023)...........................16

*United States v. Willingham*,
No. 15-60079-CR-COHN, 2025 WL 2424307 (S.D. Fla. Aug. 21, 2025)..................3, 4, 5, 16

**Statutes**

18 U.S.C. § 3142(g) ...................................................................................................15

18 U.S.C. § 3553(a) ..............................................................................................15, 16

18 U.S.C. § 3582(c)(1)(A)(i) ...............................................................................1, 4, 11

**Other Authorities**

Elizabeth Cauffman et al., *Written Testimony*, Public Hr'g on Proposed Amendments to the Federal Sentencing Guidelines Before the U.S. Sent'g Comm'n (Mar. 7, 2024), https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20240306-07/cauffman.pdf ..............................................................7

BJ Casey et al., *Written Testimony*, Public Hr'g on Proposed Amendments to the Federal Sentencing Guidelines Before the U.S. Sent'g Comm'n (Mar. 7, 2024), https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20240306-07/casey.pdf ...............................................7

U.S Sent'g Comm'n, Amendment 829 .............................................................................7

U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines, Policy Statements, Official Commentary, and Statutory Index (2023) ............ 1

U.S. Sent'g Comm'n, *Federal Sentencing Statistics for the Eleventh Circuit, Fiscal Year 1995* ............ 13

U.S. Sent'g Comm'n, *Federal Sentencing Statistics for the Southern District of Alabama, Fiscal Year 1995* ............ 13

U.S.S.G. § 1B1.13(b)(5) ............ *passim*

U.S.S.G. § 1B1.13(b)(6) ............ 1, 2, 12, 14

U.S.S.G § 5H1.1 ............ 7

## INTRODUCTION

Defendant Christopher Hunter submits this supplemental brief in support of his Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), Dkt. 163 ("Motion"). Although Hunter acknowledges that the Supreme Court's recent decision in *Rutherford v. United States,* 608 U.S. ___, 146 S. Ct. 1320 (2026) forecloses his argument under U.S.S.G. § 1B1.13(b)(6), *see* Motion for Supplemental Briefing, Dkt. 176 at 1, the Supreme Court did not limit relief available under § 1B1.13(b)(5), which remains an independent and viable basis for relief in Hunter's case. Hunter's circumstances, when viewed in their totality, provide an extraordinary and compelling reason for relief under § 1B1.13(b)(5). Accordingly, the Court should grant Hunter's Motion and reduce his sentence to time served.

U.S.S.G. § 1B1.13(b)(5) expressly allows courts to find extraordinary and compelling reasons for a sentence reduction where the "defendant presents any other circumstance *or combination of circumstances* that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)(5) (emphasis added). In promulgating § 1B1.13(b)(5), the United States Sentencing Commission intentionally accounted for deserving defendants who may not fall within a specifically enumerated category. *See United States v. Evans*, 759 F. Supp. 3d 1247, 1266–67 (S.D. Fla. 2024). Section (b)(5) provides that a defendant's circumstances should be considered as a *whole*, not in isolation. *See* Amendments to the Sentencing Guidelines, Policy Statements, Official Commentary, and Statutory Index, at 10 (2023) (explaining "[t]he Commission recognized that during the period between the enactment of the First Step Act in 2018 and this amendment, district courts around the country based sentence reductions on dozens of reasons and combinations of reasons" and that the catchall guideline was intended to permit judges to continue to determine whether "circumstances or [a]

combination of circumstances are sufficiently extraordinary and compelling to warrant a reduction").

Hunter's personal circumstances, taken together and considered alongside the stark disparity between Hunter's sentence and his co-defendant's, justify relief. As detailed in his Motion, Hunter's constellation of personal circumstances, namely his (i) exemplary rehabilitation, (ii) strong family support upon release, and (iii) youth and traumatic family circumstances at the time of the offense, collectively constitute extraordinary and compelling reasons justifying relief. *See* Motion at 9–14. Hunter's rehabilitation is particularly compelling given his recent courageous intervention in a dangerous situation at his former facility, FCI Talladega. These personal circumstances fall squarely within the "heartland" of compassionate release under § 1B1.13(b)(5). *Rutherford*, 146 S. Ct. at 1331. And when considered in conjunction with the sheer length of Hunter's sentence and the significant disparity at sentencing between Hunter and his co-defendant, Hunter's claim for compassionate release is all the more compelling and extraordinary. For these reasons, this Court should reduce Hunter's sentence to time served.

## ARGUMENT

### I. Section 1B1.13(b)(5) Remains an Independent Basis for Compassionate Release.

The Court's decision in *Rutherford* did not remove § 1B1.13(b)(5) as a viable path for defendants deserving of compassionate relief. Rather, the Supreme Court held that "[w]hen Congress declines to make a sentencing amendment retroactive, the fact that a preamendment sentence is longer than it would have been postamendment is not an extraordinary and compelling reason that warrants a sentence reduction." *Rutherford*, 146 S. Ct. at 1330 (citation modified). While the decision foreclosed relief under § 1B1.13(b)(6), it did not limit relief available under § 1B1.13(b)(5), which remains an independent basis for relief in Hunter's case.

*See id.* at 1331 ("We need not decide whether there are reasons beyond personal circumstances that could qualify as 'extraordinary and compelling.'"); *see also id.* at 1331 n.5 (even before the Sentencing Commission amended its policy statement in 2023, it "recognized that 'other reasons' could qualify [as grounds for compassionate release], 'as determined by the Director of the Bureau of Prisons,'" which is "well positioned to identify 'other reasons' based on a prisoner's personal circumstances" (citation modified)).

*Rutherford* clarified that parsing the terms "extraordinary" and "compelling" requires a careful analysis of context. *Id.* at 1332 ("[T]he terms 'extraordinary' and 'compelling' leave room for judgment"; while "they are not so flexible as to encompass any consideration[,] [t]heir meaning depends on context"). Without purporting to delineate every circumstance that could qualify as "extraordinary and compelling," the Court explained that "the heartland of compassionate release . . . has long been defined by a prisoner's personal circumstances." *Id.* at 1331.

Indeed, courts have repeatedly recognized that § 1B1.13(b)(5) provides an avenue for relief for extraordinary and compelling circumstances beyond those enumerated in subsections (b)(1)–(4). "Importantly, § 1B1.13(b)(5) does not require that a defendant present 'other reasons' that are similar <u>in nature</u> to those listed in (b)(1)–(4), rather, it states that 'other reasons' are to be 'similar <u>in gravity</u>.'" *United States v. Willingham*, No. 15-60079-CR-COHN, 2025 WL 2424307, at *2 (S.D. Fla. Aug. 21, 2025) (citation modified; emphasis in original). Numerous courts throughout the Eleventh Circuit have relied on subsection (b)(5) to find that various combinations of personal circumstances are similar in gravity to the reasons enumerated in § 1B1.13(b)(1)–(4) and can collectively rise to the threshold of "extraordinary and compelling" reasons for a sentence reduction. *See, e.g.*, *United States v. Smith*, 762 F. Supp. 3d 1249,

1253−55 (S.D. Fla. 2024) (granting sentence reduction under § 1B1.13(b)(5) because of the defendant's youth and intellectual issues, his rehabilitation, and his sentencing disparity with his co-defendants); *United States v. Matthews*, No. 5:01-CR-18 (MTT), 2025 WL 2055526, at *5 (M.D. Ga. July 22, 2025) (reducing sentence under § 1B1.13(b)(5) based in part on defendant's rehabilitation and the unlikelihood that he would outlive his 840-month sentence); *Willingham*, 2025 WL 2424307, at *2 (granting sentence reduction and emphasizing the defendant's relative youth at the time of the offenses, traumatic childhood, and rehabilitation); *United States v. Brown*, No. 12-20953-CR-COHN, 2025 WL 2429021, at *3 (S.D. Fla. Apr. 25, 2025) (granting sentence reduction and citing the defendant's youth, sentencing disparity with his co-defendants, and rehabilitation). Nor has this practice changed since the Supreme Court's decision in *Rutherford v. United States*. *See, e.g.*, *United States v. Risher*, No. 1:19-CR-539 (FB) (JRC), 2026 WL 1862339, at *3 (E.D.N.Y. June 29, 2026) (concluding that "nothing in *Fernandez* or *Rutherford* precludes the court from considering whether defendant's personal circumstances can rise to the level of an 'extraordinary and compelling' circumstance").

Hunter's personal circumstances fall squarely within the "heartland of compassionate release." *See* Motion at 9−14; Defendant's Reply in Further Support of Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), Dkt. 171 at 13−14. His youth and traumatic family circumstances at the time of the offense, his outstanding rehabilitation and recent heroism while incarcerated, and his strong family support upon release all mark Hunter's case as extraordinary and compelling. These considerations are made only more compelling when considered in connection with the extraordinary length of Hunter's sentence and the sharp disparity between his sentence and that of his co-defendant. Accordingly, Hunter's extraordinary and compelling circumstances provide an independent basis for relief under § 1B1.13(b)(5).

## II. Hunter's Personal Circumstances and Sentencing Disparity Amount to Extraordinary and Compelling Reasons Warranting a Reduction of His Sentence Under § 1B1.13(b)(5).

### A. Hunter's Youth and Family Circumstances at the Time of the Offenses Weigh in Favor of a Reduced Sentence.

As explained in Hunter's Motion, Hunter's youth at the time of his offenses and the traumatic family circumstances of his upbringing favor a reduction of his sentence. Motion at 12–14. Hunter was raised in a high-crime area of Mobile, Alabama. He never knew his biological father and was raised in a dysfunctional household by a domineering stepfather. He leaned on his sister and grandfather for emotional and physical security, but he lost both at a young age. His sister died of sickle cell anemia when he was just 13 years old, and his grandfather died in July 1992 when he was only 18 years old. *See* Motion at 3; Presentence Investigation Report at 24–25. A few months later, while still reeling from grief, Hunter made a life-changing mistake when he participated in a series of armed carjackings.

An inmate's age and family circumstances are two of the quintessential personal circumstances favoring compassionate release. *See Rutherford*, 146 S. Ct. at 1331. Courts routinely cite to a defendant's age and family circumstances as factors supporting a sentence reduction under § 1B1.13(b)(5). *See, e.g.*, *Willingham*, 2025 WL 2424307, at *2–3 (S.D. Fla. Aug. 21, 2025) (granting sentence reduction and citing the defendant's youth (22 years old) and "traumatic childhood"); *Smith*, 762 F. Supp. 3d at 1254 (granting sentence reduction where defendant "was twenty at the time of the underlying offenses and although he was not a juvenile, the qualities that distinguish juveniles from adults do not disappear when an individual turns 18.") (citation modified); *Brown*, 2025 WL 2429021, at *3 (granting sentence reduction and

citing the defendant's "young age [of 20 years old] and mental instability at the time he committed his crimes").[1]

As discussed in Hunter's Motion, it is now commonly understood that youthful offenders like Hunter are significantly less likely than older offenders to re-offend. Motion at 13–14. Neuroscience has established that the regions of the brain responsible for self-control and judgment continue to develop through an individual's mid-to-late twenties. A study funded by the Department of Justice noted that "unlike logical-reasoning abilities, which appear to be more or less fully developed by age 15[,] psychosocial capabilities that improve decision making and regulate risk taking—such as impulse control, emotion regulation, delay of gratification, and resistance to peer influence—continue to mature well into young adulthood."[2] Hunter's actions as an 18-year-old youth are not indicative of an innate propensity toward criminal behavior, *id.*, particularly in recognition of the selfless heroism Hunter has recently displayed, as discussed *infra*. Moreover, research shows that "[f]or most crimes, the likelihood that someone will continue committing them once they hit 40 is negligible."[3] Hunter is now 52 years old; he

---

[1] *See also United States v. Countess*, No. 04-232-BAH, 2026 WL 482312, at *5 (D. Md. Feb. 20, 2026) (observing that "the difficult upbringing [defendant] endured and his relatively young age [of 25 years old] at the time of [the offense] also support a finding of extraordinary and compelling reasons supporting a reduced sentence."); *United States v. Palacios*, No. 97-CR-646 (CBA), 2025 WL 1446131, at *4 (E.D.N.Y. May 20, 2025) (reducing defendants' sentences to 30 years because "in light of the evolution of Supreme Court jurisprudence regarding the diminished culpability of adolescents since the [defendants] were sentenced, their youth at the time of their offense counsels against a life sentence" (citation modified)); *United States v. LeBaron*, No. CR H-92-177-05, 2023 WL 7308116, at *8 (S.D. Tex. Nov. 6, 2023) ("a defendant's youth at the time of the offense and the impact of a traumatic upbringing can serve as extraordinary and compelling reasons to reduce a mandatory life sentence when considered in light of emerging scientific research"); *United States v. Cruz*, No. 94-CR-112 (JCH), 2021 WL 1326851, at *5 (D. Conn. Apr. 9, 2021) ("a person 20 weeks past his eighteenth birthday exhibits the same hallmark characteristics of youth that make those under 18 less blameworthy for criminal conduct than adults").

[2] Motion at 13 (quoting James C. Holwell et al., *Bulletin 5: Young Offenders and an Effective Response in the Juvenile and Adult Justice Systems: What Happens, What Should Happen, and What We Need to Know*, 17 (July 2013), https://www.ncjrs.gov/pdffiles1/nij/grants/242935.pdf).

[3] *Id.* at 13–14 (quoting Rachel Elise Barkow, *Prisoners of Politics* 44–45 (2019)).

passed that milestone more than a decade ago. Today, Hunter is a mature man who has spent the past 33 years reflecting on his mistakes and preparing for a life outside of prison where he can finally rejoin his family.

Since Hunter filed his Motion in 2023, the United States Sentencing Commission has endorsed this scientific consensus by amending U.S.S.G § 5H1.1, its policy statement on age, to include an age-based departure that would apply to Hunter were he sentenced today. *See* U.S. Sent'g Comm'n, Amend. 829 (eff. Nov. 1, 2024). After considering expert testimony,[4] the Commission made this change in part to reflect "the evolving science and data surrounding youthful individuals, including recognition of the age-crime curve and that cognitive changes lasting into the mid-20s affect individual behavior and culpability." U.S. Sent'g Comm'n, Amend. 829. The same advancements in knowledge that informed the Commission's 2024 adoption of the age-based departure ground support a sentence reduction where, as here, the offenses of conviction were committed by a youthful defendant.

B. <u>Hunter's Remarkable Rehabilitation and Strong Family Support a Sentence Reduction.</u>

Despite serving what is effectively a life sentence, Hunter has taken full responsibility for his offenses and has spent the last 33 years rehabilitating himself into a man ready to reenter society. *See* Motion at 10–11. In the words of Hunter's former Unit Manager, J.A. Gilman:

---

[4] *See*, *e.g.*, BJ Casey et al., *Written Testimony*, Public Hr'g on Proposed Amendments to the Federal Sentencing Guidelines Before the U.S. Sent'g Comm'n, at 11 (Mar. 7, 2024), https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20240306-07/casey.pdf ("there is now a consensus that brain and behavioral development continues well into a person's twenties"); Elizabeth Cauffman et al., *Written Testimony*, Public Hr'g on Proposed Amendments to the Federal Sentencing Guidelines Before the U.S. Sent'g Comm'n, at 2 (Mar. 7, 2024), https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20240306-07/cauffman.pdf (it is "impossible to reconcile the argument that 18 years old is a sensible age at which to expect people to 'know better'/ be 'responsible' (in a legal sense) with the observation that these indicators of impulsive, reckless, self-destructive, and antisocial tendencies peak at precisely this point").

> Mr. Hunter entered the custody of the Federal Bureau of Prisons at the age of 18, and began educating himself almost immediately. The amount of positive programs he has completed far exceeds that of the average inmate . . . review of this period of incarceration indicates a positive change in the mindset and attitude of inmate Hunter. He regularly mentors younger inmates who may have chosen the wrong path if not for his influence.

Motion at 10 (quoting Dkt. 137, J.A. Gilman, Unit Manager Mem., at 14). Unit Manager Gilman is not alone in recognizing Hunter's remarkable transformation. Well over a decade ago, in 2011, Hunter's progress report noted that he was already engaged in numerous educational, vocational, and counseling programs and observed of one such counseling program that "Mr. Hunter is so enthusiastically involved in the treatment process that he was made a class mentor." Motion at 11 (quoting Dkt. 121, Progress Rep. in Supp. of "Second Chance" Mot. at 15–16, Dec. 14, 2011). This exceptional, and uncommon, praise from Bureau of Prisons employees is echoed by Hunter's fellow inmates and family. *See United States v. Douglas*, No. CR 10-171-4 (JDB), 2021 WL 214563, at *8 (D.D.C. Jan. 21, 2021) ("Courts have found letters from prison staff—written by the unbiased people who have spent more time with [defendant] than anyone else—to be powerful evidence of his rehabilitation.") (citation modified). Since Hunter filed his Motion, many of his fellow inmates have attested to his mentorship, observing that he has "helped many young males become men,"[5] "help[ed] us gain educations whether it is [GED] or vocational training,"[6] "never given up on me,"[7] and is "a true mentor."[8] Hunter's cousins, Lonnie and Janet Street, echo these sentiments, recounting that "one of the most fascinating things to witness on our visits are the number of young men . . . who stop by to introduce him to their loved

---

5 Ex. 1, Letter from Aaron Clark at 2.

6 Ex. 2, Letter from Justin Horton.

7 Ex. 3, Letter from Larry Hooks at 1.

8 Ex. 4, Letter from Juwan Hunter at 1.

ones . . . to share the fact that Chris is a positive role model/mentor for them." *See* Motion at 15 (quoting Motion Ex. 8, Letter from Lonnie and Jackson Street).

Hunter's dedication to mentorship and service—together with his educational achievements, sparse disciplinary record, and recent heroism—speaks to the remarkable man he is today and counsels in favor of release. *See United States v. Gallego*, No. 95-CR-0284 (LAK), 2025 WL 723237, at *3–4 (S.D.N.Y. Mar. 6, 2025) (reducing sentence and citing to defendant's "extensive mentorship, leadership, and service to others" which "far exceeds mere rehabilitation.").

Over the course of his incarceration, Hunter has grown intellectually and professionally, accumulating approximately 13,000 hours of educational and vocational training. *See United States v. Robinson*, No. 2:06CR318, 2025 WL 841014, at *13 (W.D. Pa. Mar. 18, 2025) (reducing sentence and noting that "[d]espite spending his formative years in custody, [defendant] has made significant strides in bettering himself through education and career development."). He has obtained technical HVAC and electrician certifications, earned an associate's degree *cum laude* from Glenville State College, and was only a few courses shy of a bachelor's degree from Talladega College when he was transferred to FCI Manchester in late 2025. FCI Manchester does not have a college program, but Hunter hopes to return to his studies soon.

As explained in his Motion, Hunter's strong family support upon release will ensure that he and his community are able to realize the benefits of his rehabilitation. *See* Motion at 17. His aunt and uncle in Mobile, Alabama have agreed to house and support him as he "adjust[s] to life on the outside." *Id.*; Motion Ex. 1, Letter from Vanessa Drawns. Hunter's extended family is also eager to "welcome Chris in our home," "mentor and coach him in securing a job," and guide

him to community resources in Atlanta and Mobile. Motion at 17 (quoting Motion Ex. 8, Letter from Lonnie and Jackson Street). One of Hunter's cousins has "spent [her] entire career in the nonprofit sector" and will serve as a "personal resource to him," ensuring "[t]here is not a need we wouldn't be able to fulfill or get a resource and/or referral for." Motion Ex. 8, Letter from Lonnie and Jackson Street. Upon his release, Hunter hopes to continue mentoring young men by founding a nonprofit dedicated to helping disadvantaged youths channel their energy into constructive pursuits. Until then, Hunter's extensive vocational training has prepared him to work as a longshoreman or in the electrical or building trades.

Over his decades of incarceration, Hunter has maintained a nearly spotless disciplinary record with minimal infractions since 2001. He has taken full advantage of the rehabilitative opportunities presented during his incarceration and is ready, as his former Unit Manager stated, to "make positive contributions to society." Motion at 10 (quoting Dkt. 137, J.A. Gilman, Unit Manager Mem., at 14).

C. Hunter's Recent Act of Heroism Is an Extraordinary and Compelling Circumstance Favoring a Sentence Reduction.

Since filing his Motion, Hunter has further demonstrated his strong character by intervening in a dangerous situation to save the lives of at least two of his fellow inmates. Though a disciplinary review is ongoing, multiple inmates credit Hunter with heroically disarming and subduing an armed assailant who had already wounded another inmate, Quenton Clay, with a shiv, and who was threatening another inmate, Justin Horton.[9] Hunter intervened at great personal risk to himself, and his actions prevented further injuries. Clay writes in support

[9] Hunter has requested the files demonstrating this incident and his heroism through a Freedom of Information Act ("FOIA") request (FOIA Request Number 2026-05982), however the Bureau of Prison's FOIA office has stated that it will "take up to *9 months*" to provide this information. *See* Ex. 6, Bureau of Prisons FOIA Receipt Email (emphasis added).

of Hunter, "as a[] result of my injuries I was hospitalized for 5 days and if it had not been for the actions of Mr. Hunter I may not have live[d] to see this day." Ex. 5, Letter from Quenton Clay. Horton credits Hunter with taking "action as the situation was occur[r]ing[,] disarming the man from his weapon to save my life." Ex. 2, Letter from Justin Horton. A third inmate has attested in support that "[t]he entire population, staff included, was shocked to learn that Mr. Hunter had to defend himself." Ex. 1, Letter from Aaron Clark at 2.

While the attack's circumstances were indeed shocking, Hunter's instinctive response of selflessness and service to others was not. It reflects the extraordinary life-saving pattern of Hunter's conduct while incarcerated. *See* Ex. 3, Letter from Larry Hooks at 1 (describing how Hunter "literally picked me up off the floor after I had overdosed"); Ex. 4, Letter from Juwan Hunter at 2 (observing that Hunter "helped and saved so many lives"). A hero is precisely the type of person deserving compassionate release. *See United States v. Haynes,* 456 F. Supp. 3d 496, 505, 517 (E.D.N.Y. 2020) (granting a sentence reduction where the court credited defendant's explanation of a disciplinary incident where he "restrained a fellow inmate in order to break up a fight among several prisoners" and observed that defendant's conduct "shows altruism, even heroism, certainly qualities society could use more of, not less"); *United States v. Meeks*, No. 1:97-CR-00169-4, 2021 WL 9928774, at *2–3 (N.D. Ill. Dec. 15, 2021) (reducing sentence where defendant saved "another inmate's life during an attempted suicide" and explaining that "[t]hough every act of heroism is not by itself an extraordinary and compelling reason under 18 U.S.C. § 3582(c)(1)(A)(i), such acts are more than just evidence of [defendant's] rehabilitation" where "another man's life now continues on account of it."). Courts in this circuit have granted § 1B1.13(b)(5) motions where an inmate was credited with intervening in a dangerous situation to prevent serious injury to others. *See United States v. Rodriguez*, 719 F.

Supp. 3d 1262, 1268 (S.D. Fla. 2024) (reducing sentence to time served in part because defendant "saved a prison staff member from severe bodily injury when during his UNICOR Federal Prison Industries shift, [defendant] put himself in harm's way to prevent machinery from crushing the staff member's leg").

D. The Extraordinary Length of Hunter's Sentence Favors a Sentence Reduction.

Although the Court cannot rely on nonretroactive changes in law to find extraordinary and compelling reasons under § 1B1.13(b)(6), it may consider the length of Hunter's sentence as part of the "other reasons" analysis under § 1B1.13(b)(5). *See United States v. Brown*, 715 F. Supp. 3d 1034, 1043–46 (S.D. Ohio 2024) (considering "the draconian and oppressive length of [defendant's] sentence in absolute terms" under § 1B1.13(b)(5) and finding the length of the sentence in combination with other factors to be extraordinary and compelling). Courts have repeatedly granted relief where a defendant's sentence far exceeds the norm for comparable conduct. *See United States v. Johnson*, 778 F. Supp. 3d 997, 1005, 1010–11, 1022 (C.D. Ill. 2025) (finding extraordinary and compelling reasons for reduction under § 1B1.13(b)(5) where defendant's life sentence was outside the national norm for similar offenses); *United States v. Rollins*, 540 F. Supp. 3d 804, 809–11 (N.D. Ill. 2021) (distinguishing the line of cases holding that § 403 of the First Step Act cannot be applied retroactively and finding that "the sheer and unusual length of [defendant's] sentence" compared to other sentences for robbery was extraordinary and compelling (citation modified)); *see also United States v. Rivero*, 762 F. Supp. 3d 1245, 1247 (S.D. Fla. 2024) (finding that extraordinary and compelling reasons existed where defendant was sentenced with "nearly the same degree of severity as those who were arguably more culpable in the commission of the crime" (citation modified)).

Hunter's 877-month sentence (over 73 years) is an outlier by every available measure based on data from that time period. Although there was no national data for 1992, the closest-

in-time record, 1995, listed the average federal sentence for robbery in that year as 108.6 months and the average in the Eleventh Circuit as 122.4 months.[10] *See* U.S. Sent'g Comm'n, *Federal Sentencing Statistics for the Eleventh Circuit*, *Fiscal Year 1995*, at 10. Hunter's sentence is more than eight times the national average. Even accounting for the multiple carjacking convictions, if Hunter was serving four times the national average sentence for robbery (which is not how federal sentencing law generally works), that number would amount to less than half of Hunter's total sentence.

The disparity grows starker when Hunter's sentence is compared to sentences for far more serious offenses. In fiscal year 1995, the national average federal sentence for murder was 253.2 months, the Eleventh Circuit average was 222.3 months, and the average in the Southern District of Alabama was 57 months. *Federal Sentencing Statistics for the Eleventh Circuit* at 10; *Federal Sentencing Statistics for the Southern District of Alabama at 10*. No one was killed during Hunter's offenses, yet Hunter received a sentence nearly four times the Eleventh Circuit average for murder.

E. <u>The Significant Disparity Between Hunter's and His Co-Defendant's Sentence Weighs in Favor of Relief.</u>

In combination with Hunter's personal circumstances, the stark disparity between Hunter's sentence and his co-defendant's sentence also justifies relief. As explained in Hunter's motion, his co-defendant, Lenear Davis, participated in the carjackings and led police on a dangerous car chase. *See* Motion at 16. Whereas Hunter exercised his constitutional right to a

---

10 Robbery is the closest analog to Hunter's sentence in the 1995 data. Relatedly, the average sentence for auto theft nationally in 1995 was 23.2 months, 20.1 months in the Eleventh Circuit, and 15 months in the Southern District of Alabama. *See* U.S. Sent'g Comm'n, *Federal Sentencing Statistics for the Eleventh Circuit*, *Fiscal Year 1995*, at 10; U.S. Sent'g Comm'n, *Federal Sentencing Statistics for the Southern District of Alabama, Fiscal Year 1995*, at 10.

trial and received a bone-crushing 73-year sentence, Davis cooperated with prosecutors and received a sentence of only 92 months, a disparity of more than *65 years*. *Id.* While some disparity might be warranted considering Davis's cooperation, a disparity of 65 years exceeds all reasonable bounds.

Since Hunter filed his motion, courts have found that similarly extreme disparities provide an independent basis for a sentence reduction under § 1B1.13(b)(5). *See United States v. Cannon*, 764 F. Supp. 3d 1332, 1338–40 (M.D. Ga. 2025) (finding that the Sentencing Commission exceeded its authority by adopting § 1B1.13(b)(6) but granting sentence reduction under § 1B1.13(b)(5) given "the disparity of [defendant's] sentence compared to that of his codefendants" which caused him to "suffer[] a substantial penalty by exercising his constitutional right" to a trial);. *Smith*, 762 F. Supp. 3d at 1253−54 (granting sentence reduction and observing that "[o]f five co-defendants in this case, only [defendant] and the shooter were sentenced to life imprisonment" as "the result of an inflexible, minimum sentence mandate that produced the most extreme trial penalty the judicial system can impose on a defendant who exercises his constitutional right to a trial and to hold the government to its burden of proof" (citation modified)); *Brown*, 2025 WL 2429021, at *3 (granting sentence reduction and emphasizing "the disparity between Defendant's sentence and the [decades shorter] sentences of his codefendants"); *United States v. Ingram*, No. 5:94-CR-2-2, 2024 WL 3696514, at *4 (S.D. Ga. Aug. 7, 2024) (granting sentence reduction where defendant's "particularized grave circumstances" included "the significant disparity between his sentence and his codefendant's sentence"). The stark disparity here, considered alongside Hunter's personal circumstances—his youth and family circumstances at the time of the offenses of conviction, remarkable rehabilitation, and strong family support upon release—constitutes an extraordinary and compelling reason for a reduction of his sentence under § 1B1.13(b)(5).

**III. The § 3553(a) Factors Support a Reduction of Hunter's Sentence to Time Served.**

Hunter's exemplary rehabilitation, considered together with the other features of his case described above, not only supports a finding of extraordinary and compelling reasons but also weighs heavily in favor of a sentence reduction to time served under 18 U.S.C. § 3553(a).

Hunter's more than three decades of incarceration have been transformative. He has grown from a troubled youth into a mature, educated, selfless, and dedicated man who has taken accountability for his actions and expressed sincere regret. *See* Motion at 11 ("Hunter openly discussed his prior violent crimes [during counseling], taking full responsibility for his behavior.") (quoting Dkt. 121, Progress Rep. in Supp. of "Second Chance" Mot. at 15−16, Dec. 14, 2011); Motion Ex. 1, Letter from Vanessa Drawns (Hunter has "accepted responsibility for his crime"). He has established and maintained strong bonds with family and friends who are ready to support him upon release, and he no longer poses any danger to the community. *See* 18 U.S.C. § 3142(g).

While Hunter's offenses were undoubtedly serious, he has already served more than half his life as punishment. *See Smith*, 762 F. Supp. 3d at 1255 (finding the § 3553(a) factors weighed in favor of release where defendant "has served twenty-four years—roughly half his life—as punishment" for carjacking). Indeed, while "no crime [is] more serious than murder," courts regularly find that the § 3553(a) factors favor release even for defendants convicted of murder. *United States v. Cruz,* No. 94-CR-112 (JCH), 2021 WL 1326851, at *12 (D. Conn. Apr. 9, 2021) (granting sentence reduction to time served where defendant was convicted of two murders).[11]

---

11 *See also Countess*, 2026 WL 482312, at *6 (reducing sentence of defendant convicted of murder-for-hire, which "is among the most serious offenses a defendant can commit."); *Gallego*, 2025 WL 723237, at *5−6 (finding that the § 3553(a) factors weighed in favor of a sentence reduction although the defendant's "crime – a premeditated murder – is of the utmost seriousness"); *LeBaron*, 2023 WL

Additionally, even though the Court cannot consider the First Step Act's nonretroactive amendment to § 924(c)'s sentencing provisions as an extraordinary and compelling reason for a reduction, it "may be considered for purposes of determining the extent of any such reduction." § 1B1.13(c). Here, the 20-year mandatory sentence Hunter would receive today for four convictions under § 924(c) would be substantially shorter than the 65 years he is serving. Courts in the Eleventh Circuit consider sentencing disparities like Hunter's when determining the proper extent of a sentence reduction under the § 3553(a) sentencing factors. *See, e.g.*, *United States v. Vanholten*, No. 3:12-CR-96-RBD-MCR, 2023 WL 8357739, at *3 (M.D. Fla. Dec. 1, 2023) (finding that the § 3553(a) factors weighed in favor of reducing defendant's sentence where he "would not face a mandatory minimum life term under current law"); *Willingham*, 2025 WL 2424307, at *3 ("a total sentence of 180 months would eliminate the disparity created by the outdated and draconian practice of 924(c) stacking"). Hunter's unwarranted sentencing disparity weighs heavily in favor of a sentence reduction to time served. While serving his sentence, Hunter has embraced his faith,[12] advanced his education, and improved the lives of his fellow inmates. Not stopping at mentorship, Hunter is responsible for saving the life of a fellow inmate. As his former Unit Manager explains: "his level of maturity and the knowledge, skills, and abilities he gained while incarcerated will serve him well, enabling him to be a positive role model for others, and make positive contributions to society." Motion at 10 (quoting Dkt. 137,

---

7308116, at *1 (granting sentence reduction to time served where the defendant was convicted of charges stemming from "the murders of three men and a child."); *Douglas*, 2021 WL 214563, at *12–13 (finding that the § 3553(a) factors weighed in favor of reducing defendant's sentence for multiple homicides to time served).

[12] *See* Motion at 14–15 ("Since Christopher's incarceration, he has received Jesus Christ as Lord and Savior of his life, and has been a constant encouragement . . . to others inside the prison walls and those that are on the outside") (quoting Motion Ex. 6, Letter from Wanda Murray).

J.A. Gilman, Unit Manager Mem., at 14). In short, he has dedicated the last 33 years of his life to becoming a model citizen. He is ready to prove that he can do the same on the outside.

## **CONCLUSION**

Hunter is set to spend 29 more years in prison absent relief from this Court. As set forth in Hunter's Motion, and as further laid out above, he has demonstrated extraordinary and compelling reasons pursuant to § 1B1.13(b)(5) that warrant a reduction in his sentence to time served.[13] Because this provision remains fully operative and unaffected by *Rutherford*, the Court retains authority to grant the requested sentence reduction on this independent ground. Hunter respectfully urges the Court to consider his extraordinary transformation over the past 33 years and find that his circumstances warrant a reduction of his sentence under § 1B1.13(b)(5).

[13] If this Court were to agree that a sentence reduction is warranted but disagree that time served is the appropriate revised sentence, it should grant the pending motion and allow Hunter's sentence to be recalculated. A shorter sentence will enable Hunter to access programming and courses he is currently ineligible for given the length of his sentence.

Dated: July 31, 2026

Respectfully Submitted

*/s/ John Gleeson*

John Gleeson (*admitted pro hac vice*)
Jacob Hochberger (*admitted pro hac vice*)
Joshua Plastrik (*admitted pro hac vice*)
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, NY 10001
(212) 909-6000 (phone)
(212) 909-6836 (fax)
jgleeson@debevoise.com
jhochberger@debevoise.com
jhplastrik@debevoise.com

Joseph M. Ptomey (*admitted pro hac vice*)
DEBEVOISE & PLIMPTON LLP
801 Pennsylvania Avenue N.W. – Suite 500
Washington, D.C. 20004
(202) 383-8000 (phone)
(202) 383-8118 (fax)
jptomey@debevoise.com

*Attorneys for Christopher Hunter*

**CERTIFICATE OF SERVICE**

I, John Gleeson, Counsel for Defendant Christopher Hunter, hereby certify I caused a true and correct copy of the foregoing Supplemental Brief in Further Support of Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) to be served via ECF upon counsel of record:

Marjorie Vincent-Tripp
Assistant United States Attorney
United States Attorney's Office
Southern District of Alabama
63 South Royal Street, Suite 600
Mobile, Alabama 36602
(251) 441-5845
(251) 441-5277 (fax)

Sean P. Costello
Office of the Attorney General
11 North Water Street, Suite 30100
Mobile, Alabama 36602
(251) 441-5845
(251) 441-5051 (fax)

This 31st day of July, 2026.

By: *<u>/s/ John Gleeson</u>*

John Gleeson

*Counsel for Christopher Hunter*